PHILLIP A. TALBERT
United States Attorney
CHRISTINA McCALL
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DAVID JOHN ALCOCK,<br><br>Defendant. | CASE NO. 2:21CR00162<br><br>UNITED STATES' SENTENCING MEMORANDUM<br><br>DATE: January 6, 2022<br>TIME: 9:30 A.M.<br>COURT: Hon. Troy L. Nunley |

## I.  INTRODUCTION

The United States respectfully submits its sentencing memorandum concerning David John Alcock, who is now convicted of exploitation of a child. In this disturbing case, after being identified in an earlier federal investigation into trafficking in child exploitation images and videos, in late 2019 through 2020, Alcock sexually abused a 12 to 13-year-old child (Minor Victim 1) on multiple occasions and created video recordings of the abuse. Defendant also trafficked in images and videos of children, some as young as toddlers, being terribly sexually abused. In light of the seriousness of Alcock's offense conduct, his history and characteristics, and the need to protect the public from further crimes committed by Alcock, the government requests that the Court impose a sentence of 292 months in prison, followed 20 years of supervised release, and order restitution to victims of uncharged conduct and a special assessment of $100.

UNITED STATES' SENTENCING MEMORANDUM     1

## II. PROCEDURAL HISTORY

Alcock was originally arrested by Citrus Heights Police Department (CHPD) detectives on May 22, 2020, and charged by the Sacramento County District Attorney's Office with multiple crimes relating to the sexual abuse of Minor Victim 1. As part of a negotiated global resolution, where Alcock will be convicted and sentenced in federal court, followed by conviction and expected concurrent sentencing in Sacramento Superior Court, Alcock waived indictment and an Information charged him with a violation of 18 U.S.C. § 2251(a) – Sexual Exploitation of a Child. Docket 1, Information. On September 23, 2021, pursuant to a written plea agreement, Defendant pleaded guilty to the single count in the Information, Sexual Exploitation of a Child. Docket 14. Defendant agreed that the facts in the Factual Basis for Plea attached as Exhibit A to the Plea Agreement are accurate. *Id*.

If the Court accepts the Plea Agreement terms under Rule 11(c)(1)(C), the sentence of imprisonment will be between 240 and 292 months, and the term of Supervised Release will be between 10 and 20 years. *Id*. at 9. As part of the Plea Agreement, the Government agreed, at the time of sentencing, to not to bring additional charges based on Defendant's criminal conduct (*Id*. at 6), as outlined in Exhibit A to the Plea Agreement. *Id.* at 14. The Government also agreed to recommend that Alcock be sentenced to the low end of the applicable guideline range as determined by the Court. *Id*. at 6-7, 9. In addition, Defendant agreed that he is subject to mandatory restitution to the family of Minor Victim 1. Id. at 3. Defendant also agreed to pay restitution to the victims of the sexual abuse depictions that he possessed between $3,000 and $5,000 for each victim, as identified by submission of a valid restitution claim in this case. *Id*. at 3.

## III. FACTUAL BACKGROUND

### A. 2010 ICE / HSI Investigation

Alcock's criminal conduct in the child pornography arena first came to light due to a nationwide investigation conducted by Immigration and Customs Enforcement (known known as Homeland Security Investigations) in 2010. At that time, agents identified Alcock as someone who had been knowingly downloading child sexual abuse materials via the internet. PSR ¶ 33. Agents spoke with Alcock at his former residence in San Jose, and he admitted that he had been viewing and downloading child pornography since 2000. *Id*. He admitted using PayPal to purchase child pornography starting in

2005 or 2006. *Id*. He made additional statements such as, "I'm glad this is coming to an end or I would always feel bad. I don't want my mom or wife to suffer about my stupidity." *Id*. However, a forensic examination of Alcock's computers that he voluntarily turned over to agents did not reveal sufficient information to prosecute him, so criminal charges were never filed. *Id*.

### B. Investigation by CHPD

Ten years after Alcock was interviewed by ICE agents for downloading materials showing the sexual abuse of children, this case began with a CyberTipline report submitted through the National Center for Missing and Exploited Children. Docket 20, PSR ¶ 6. Google indicated that David Alcock had two images of pre-pubescent children engaging in sexual behavior in his account in March of 2020. *Id*. That report was sent to CHPD. *Id*. A CHPD detective obtained a search warrant for Alcock's Google account. In the Google Hangout part of Alcock's account, detectives found an image depicting sadistic abuse of a very young child: an approximately 6-year-old girl straddling a male with her back facing his head and the front of her facing the camera. The adult male's penis is inserted into the girl's vagina. PSR ¶ 7. They also found an image showing a naked 9-year-old girl orally copulating a 9-year-old boy in the shower. *Id*.

Most disturbing, the detectives located video files showing Alcock sexually abusing Minor Victim 1, who was 13 years old and who was wearing a T-shirt with the name of a middle school located in Sacramento County. *Id*. CHPD detectives noted the bedroom in the video where Alcock was sexually abusing the child appeared to be the same one Alcock had photographed and stored in his Google photos. PSR ¶ 8. Officers responded to the middle school identified in the t-shirt worn by the child and school officials identified the victim. *Id*.

On May 22, 2020, a law enforcement team executed a search warrant at Alcock's residence. PSR ¶ 11. In an interview, Alcock immediately accepted responsibility for his crimes and admitted that he began a sexual relationship with Minor Victim 1 when the victim was 12 years old. *Id*. He also admitted taking several videos of the victim while the victim engaged in sexual acts with Alcock. *Id*. Alcock said that he had shared the videos he made of Minor Victim 1 a few times, and said that he had been downloading and sharing other child pornography files with people on the internet. *Id*. A search of Alcock's iPhone at his residence found nine separate video files engaging in sexual abuse of Minor

Victim 1. PSR ¶ 14. Detectives also located an alarming "Hangout" text chat between Alcock and someone else, in which Alcock recounted the sexual abuse that he engaged in with Minor Victim 1. *Id*. During that chat, Alcock also claimed that he sexually abused Minor Victim 1's 8-year-old sibling. *Id*. The 8-year-old denied that s/he had been improperly touched by Alcock. PSR ¶ 10. Alcock told the detectives that he lied during the Hangout chat when he claimed he had sexually abused the 8-year-old in various ways. PSR ¶ 13. He also said that he lied when he sent messages to an unknown person on the internet claiming he had sexually abused his niece. Alcock's niece, now an adult, said she did not recall anything inappropriate that Alcock had done to her when she was younger. *Id*.

### C. Forensic Investigation

#### 1. Defendant's iPhone

On Alcock's iPhone 8+, which had 256 GB of storage and was located under Alcock's bed on the date he was arrested, law enforcement agents located more than 200 videos depicting the sexual abuse of children, and many more still images showing similar depictions. Docket 14 at 14. Several videos depicted children from toddler age up to approximately six years old of age being violently raped by male adults. PSR ¶ 34. The children were screaming and crying in the videos as they were sexually assaulted. *Id*. There were also videos showing children engaged in sexual acts with animals, male and female adults, and other children. *Id*. A NCMEC report identified 23 victim series from video files submitted from Alcock's iPhone. *Id*.

## IV. SENTENCING GUIDELINES CALCULATION

### A. Sentencing Guidelines Calculations

As set forth in the plea agreement and the PSR (¶¶ 20-32), the base offense level for sexual exploitation of a child is 32: U.S.S.G. §2G2.1(a). Applicable specific offense characteristics include a minor victim age 12-16 (+2 levels under U.S.S.G. §2G2.1(b)(1)(B)), commission of a sexual act (+2 levels under U.S.S.G. §2G2.1(b)(2)(A)), and knowing distribution (+2 levels under U.S.S.G. §2G2.1(b)(3)). After a three-level reduction under U.S.S.G. §3E1.1 (Alcock's admissions to the detectives on the date he was arrested, his remorseful statement to the Probation Officer, and his pre-indictment guilty plea collectively show his complete acceptance of responsibility), and a pattern of

prohibited sexual conduct enhancement under U.S.S.G. §4B1.5(b)(1), the total adjusted offense level is 40. These calculations are undisputed by the parties, and are the same as the Probation Department's.

### B. Criminal History / Prior Convictions

The Government agrees with the Probation Department's criminal history computations. PSR ¶¶ 36-42. Alcock's criminal history category is I, with 0 criminal history points. The range of suggested imprisonment under the Sentencing Guidelines is 292 to 360 months (due to the 30-year statutory maximum sentence for this crime). PSR ¶ 67.

## V. ANALYSIS OF SENTENCING FACTORS UNDER 18 U.S.C. 3553(A)

### A. Nature and Circumstances of the Offense

#### 1. The Instant Offense is Extremely Serious

This extremely serious and dangerous child exploitation offense involved defendant engaged in hands-on sexual abuse of a child aged 12-13 for a period of many months. Alcock chose to videotape his abuse of Minor Victim 1, and then sent those videos to some other people on the internet. For two decades, Alcock has been collecting visual depictions of the sexual abuse of minors, and he escalated his criminal behavior to sexually harming a child close to him. Alcock also told people on the internet that he had sexually abused his niece when she was a child, and that he had sexually abused an 8-year-old who is the sibling of Minor Victim 1. Although those statements were likely lies designed to impress other child predators online, Alcock's crimes highlight the overlap between his trafficking in child sexual abuse visual depictions, his online activity focused on child sexual abuse, his repeated hands-on sexual abuse of Minor Victim 1, and his own recording of that abuse to share with other disturbed individuals online.

#### 2. The Impact on the Victims is Very Harmful

Minor Victim 1's family has not submitted a victim impact statement or a restitution request, and has indicated a desire to this office's victim coordinator not to continue to reflect on Alcock's prior abuse of their child. PSR ¶ 17.

The victims of the abuse depicted in Alcock's hundreds of video and photo files stored in his iPhone come from at least 20 known series. For each series, at least one real child was molested; for many series, multiple child victims were involved. For some of the series, authorities still have not

identified the victims. The identified victims in this case were from locations as far flung as: Georgia; Canada; Washington; Brazil; Texas; Alabama; Russia; Michigan; United Kingdom; Hawaii; Connecticut; Georgia; Arizona; Tennessee; Italy; and Germany. The victims portrayed in the images that Alcock received, distributed, and possessed have expressed a desire to hold offenders such as him accountable for their continued fear and suffering.

One victim, whose sexual abuse was shown in a video Alcock had in his WhatsApp shared folder on his iPhone, wrote, "I was only seven when my predator began molesting me and photographing me . . . I worry about the pictures of me that are out there and I hate that others see them." Docket 20-6 at 2. Another victim wrote, "With each criminal case that I hear about I know that many more copies of my images are spread around the internet; I know that there is a lesser and lesser chance that the horror I feel about people seeing me in this way will ever end." Docket 20-5 at 5. The parents of another victim whose depictions of abuse Alcock trafficked in wrote, "Thousands upon thousands people, all over the world have access to images of our little girl during her darkest days . . . A person can download her image, create their own child pornography movie, share it with other monsters, or keep it for themselves to continuously exploit our daughter in their own private bedroom." Docket 20-7.

### B. History and Characteristics of Defendant

Alcock's history and characteristics demonstrate that he has a history of mental health issues, and was close to his mother, who also had a history of mental health issues. PSR ¶¶ 47, 49, 53, 57, 58. Alcock has positive characteristics, with his mother-in-law indicating that he was a good caretaker for his wife (before she left him) and his mother (before she died) (PSR ¶ 51) and his niece describing him as "a nice guy with a good heart" (PSR ¶ 13). Alcock also appears truly remorseful for his disturbing crimes, based upon his statements to the detectives, his pre-indictment guilty plea, and the statement he provided to United States Probation (PSR ¶ 19), indicating "a great amount of remorse for everything I have done."

However, as described above, Alcock's offense conduct is extremely serious and dangerous. Although Defendant had a challenging childhood, as detailed in the Presentence Report, that is not an excuse for his criminal conduct, especially toward minors. He is now 48 years old, so not only are his

most recent crimes decades removed from his childhood, but he has had periods when he has been able to live a seemingly normal life. For example, he previously worked as a security guard, truck driver, and in retail services. PSR ¶ 61. He passed his California Proficiency Examination in 1992 and had a long period when he was doing really well and taking care of his wife and his mother. PSR ¶¶ 60, 51-53.

Leading up to his arrest in this case, Defendant chose to engage in a sustained campaign of crimes against children, trafficking in the visual depictions of children being sexually abused for two decades, and escalating to himself continually sexually abusing a 12/13-year-old whom he was close to, videotaping the abuse, and exchanging those videos with other predators online. Alcock's actions underscore his persistent and escalating involvement in sexual crimes against children, which counsel in favor of a 292-month sentence.

### C. Reflecting the Seriousness of the Offense, Promoting Respect for the Law, and Providing Just Punishment for the Offense

When imposing a sentence, courts consider the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offenses. As set forth in detail above, Alcock's criminal conduct, directed at children, is extremely serious and disturbing. He engaged in repeated sexual abuse of Victim 1 over a course of many months. Simultaneously, he trafficked in videos and images of children being terribly sexually abused and exploited. The government respectfully submits that the recommended sentence of 292 months in prison, which is the low end of the Sentencing Guidelines range and is the same sentence United States Probation recommends, is the minimum sentence sufficient to achieve the factors set forth in 18 U.S.C. 3553(a)(2)(A).

### D. Deterrence to Criminal Conduct / Protect the Public from Future Crimes of Defendant

The government's recommended sentence should provide specific and general deterrence to further criminal conduct. Alcock has now been caught twice by law enforcement officers for child exploitation and pornography crimes, ten years apart. The first time that armed federal agents came to his home, interviewed him, and took his electronic devices should have stopped Alcock from continuing his illegal child pornography activities. But instead, Alcock escalated to continually sexually abusing a

12/13-year-old child, and bragging about it in chats online.  The recommended sentence of 292 months, with Bureau of Prisons programming directed at sexual offenders, should hopefully help specifically deter Alcock, or at least incapacitate him from committing additional crimes against children.  In terms of general deterrence, a significant sentence of 292 months will deter others from sexually abusing children and producing video recordings of the abuse, and from trafficking in visual depictions of child sexual abuse.

### E. Avoiding Unwarranted Sentencing Disparities

The government submits that the 292-month sentence, representing the low end of the applicable Sentencing Guidelines suggested range of imprisonment, and also recommended by United States Probation, would meet the statutory goal of avoiding unwarranted sentencing disparities, under 18 U.S.C. § 3553(a)(6).  In fiscal year 2019, the average sentence imposed for Sexual Exploitation of a Minor was 275 months.  https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20211013_Production-CP.pdf at 26.  So, the proposed sentence for Alcock is in line with the national average for his most serious crime, and the fact that Alcock is not being prosecuted for trafficking in terrible child sexual exploitation images counsels for the 292-month sentence.

### F. Providing Restitution to Victims of the Offenses

Although Defendant entered a guilty plea to sexual exploitation of a child, for which Minor Victim 1's family has not submitted a restitution claim, his plea agreement provides that he will pay restitution to the victims of the uncharged criminal conduct (distribution, receipt and possession of child sexual abuse material) between $3,000 and $5,000 for each victim who submits a valid restitution claim in this case. Docket 14 at 3.  In this case, two victims in "series" cases submitted restitution requests.  For the victim in the Jenny series, Alcock had a video depicting her abuse in his WhatsApp shared folder.  The government requests that the Court impose $4,000 in restitution for the victim known as Jenny.  Government counsel has consulted with counsel for the Jenny victim (at the Marsh Law Firm), who agrees with the proposed $4,000 restitution amount for her client.  Government counsel has consulted with counsel for the PD11 victim, who confirmed that the request for restitution has been revoked under the circumstances of this case.

## VI. JUSTICE FOR VICTIMS OF TRAFFICKING ACT (JVTA) ASSESSMENT

The Presentence Report concludes that the $5,000 Justice for Victims of Trafficking Act (JVTA, 18 U.S.C. § 3014) special assessment should not be imposed in this case, given Alcock's indigency. Given the unique circumstances of this case, the government agrees that defendant is indigent for the purposes of the JVTA special assessment, even when considering his future earnings potential. First, it is undisputed that defendant has no appreciable assets (beyond $5,000 in a bank account, which should be converted to pay restitution) at this time. PSR ¶¶ 63-65. Prior to his arrest, defendant was supported by Social Security SSI payments and a special needs trust account, which is being dissolved. *Id.* ¶ 64. Second, defendant's future earnings potential is not promising. Defendant is 48 years old, and will serve approximately 20 more years in prison because of this conviction. Defendant has no special skills or education, has ongoing mental health issues as documented in the PSR, so his future earnings potential is very limited. There is no indication that defendant will receive financial support from his family in the future. The money that Alcock can earn through the Inmate Financial Responsibility Program at the Federal Bureau of Prisons should go toward victim restitution.

## VII. CONCLUSION

For all the foregoing reasons, the government asks the Court to impose the recommended 292-month prison sentence, to be followed by 20 years of Supervised Release, with the conditions recommended by the United States Probation Officer, including registration as a sex offender under California law, and a $100 special assessment (incorporating the mandatory assessment under 18 U.S.C. §§ 3013). The government also requests that the Court order restitution of $4,000 to the victim known as Jenny, who submitted a sufficient restitution claim in this case.

Dated: December 30, 2021

PHILLIP A. TALBERT
United States Attorney

By: /s/ CHRISTINA McCALL
CHRISTINA McCALL
Assistant United States Attorney